IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **PEGGY SUE BYRD,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00051 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford & Reynolds, Norton, Virginia, for Plaintiff.  Nora Koch, Acting Regional Chief Counsel, Region III, Timothy F. Kennedy, Assistant Regional Counsel, Alexander L. Cristaudo, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I remand for further development of the record.

I

Plaintiff Peggy Sue Byrd filed this case challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C.A. §§ 1381-1383f (West 2012).  Jurisdiction of this court exists under 42 U.S.C.A. § 1383(c)(3).

Byrd filed an application for benefits on April 24, 2008, alleging disability beginning March 21, 2000. The claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") on May 4, 2010, at which Byrd, represented by counsel, and a vocational expert testified. On July 2, 2010, the ALJ issued a written decision, finding that Byrd was not disabled. The Social Security Administration's Appeals Council denied review on June 2, 2011, thereby making the ALJ's decision the final decision of the Commissioner. Byrd then filed her Complaint in this court seeking judicial review of the ALJ's decision.

The parties have filed cross motions for summary judgment which have been briefed. The case is ripe for decision.

II

The sole issue before the court is whether the ALJ erroneously failed to consider whether Byrd met the listing requirements for mental retardation. My review of the facts will be limited to those relevant to this determination.

Byrd was 38 years old at the time of the ALJ's decision. She graduated from high school, but was enrolled in special education classes throughout her education. Her school system confirmed that Byrd had been in the special education program while attending school and that she had been classified as

"mildly retarded" while in elementary school.  (R. at 244.)  She has worked in the past as a seamstress, in a retail store stocking shelves, unloading trucks, and as a cashier, and in a fast food restaurant.

In her application for benefits, Byrd reported that she did household chores with her boyfriend, prepared meals and shopped for groceries.  She also reported that she was able to pay bills, count change, and use a checkbook.  She does not drive and has never had a driver's license.  She testified that she can read and write but has "a hard time" understanding a newspaper.  (R. at 39.)

In connection with an earlier claim for benefits, Byrd was scheduled for a consultative mental examination, including an I.Q. test, but she failed to appear. Accordingly, a state agency psychologist concluded that he could not determine her mental claims because she had failed to appear for the consultative examination.  At the hearing before the ALJ, Boyd testified that she had failed to appear for the examination because her car had broken down.

At the end of the hearing, the ALJ stated that she would order a physical consultative examination but not a mental one because Byrd had testified that she had not experienced any mental impairment.

In her final decision, the ALJ concluded that Byrd had the severe impairments of lumbago and degenerative disc disease of the lumbar and thoracic spine.  In concluding that Byrd did not suffer from a severe mental impairment, the

ALJ stated that the record did not reflect a medically determinable mental impairment, that Byrd had not complained of a mental impairment to her treating physicians, and that she had not been diagnosed or treated for a mental impairment. In addressing whether any impairments reached listing level, the ALJ assessed only whether Byrd's spine problems met the listing requirements.  The ALJ considered the information from the school system when assessing Byrd's residual functional capacity but noted that the record contained no I.Q. testing or psychological evaluations and that Byrd had failed to appear for the consultative examination scheduled for her prior benefits application.

Byrd argues that the ALJ inappropriately adjudicated her case and requests a remand.  For the following reasons, I agree and will remand the case for further development of the record on Byrd's possible mental impairment.

III

The Social Security Administration's regulation listing for mental retardation provides that

> 12.05 Mental retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2011).  Byrd now claims that the ALJ should have considered whether she met subpart C of § 12.05:

> A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

*Id.*

While the plaintiff bears the burden of proving that she is under a disability, *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972), "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate," *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

There is evidence in the record that indicates that Byrd may have the impairment of mental retardation.  She was diagnosed as mildly mentally retarded in elementary school and was in special education classes throughout her education.  She had been previously scheduled for a mental consultative examination, including an I.Q. test, for her prior application for disability but failed to show up for the exam.  At her hearing, she explained that her car broke down, preventing her from being able to attend.  Because of the lack of a mental status examination, the state agency psychologist who reviewed her file was unable to reach any conclusion as to her mental status.

The evidence here was sufficient to trigger the ALJ's duty to further develop the record by ordering a mental status examination, including an I.Q. test. As argued by the Commissioner, Byrd may not have deficits in adaptive functioning as required for listing level mental retardation. However, without the benefit of a mental status examination, it is unclear as to Byrd's capabilities or limits. Upon remand, the ALJ shall further develop the record as to the plaintiff's possible mental retardation, including a consultative mental status evaluation and I.Q. testing.

### IV

For the foregoing reasons, the final decision of the Commissioner will be vacated and the case remanded for further development of the record.

DATED: April 19, 2012

/s/ James P. Jones
United States District Judge